UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| SHILO SANDERS | ) | Case No. 23-14859-MER |
| | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| | ) | |
| JOHN DARJEAN, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Pro. 24-01023-MER |
| | ) | |
| v. | ) | |
| | ) | |
| SHILO DION SANDERS, | ) | |
| | ) | |
| Defendant. | ) | |

**MOTION TO DISMISS PLAINTIFF'S COMPLAINT
PURSUANT TO FED. R. BANKR. P. 7012(b)(6)**

The Defendant, Shilo Dion Sanders ("Debtor" or "Shilo"), by and through his attorneys, Kutner Brinen Dickey Riley, P.C., moves the Court for entry of an Order dismissing the above captioned Adversary Proceeding pursuant to Fed. R. Civ. P. 12(b)(6), as incorporated by Fed. R. Bankr. P. 7012, and in support thereof, states as follows:

**INTRODUCTION**

The case at hand represents the next step in a nearly decade long saga to destroy a young man's life and leave him financially at the mercy of an aggressor who is looking to take advantage of the Debtor's potential and his familial connections. The Complaint filed by the Plaintiff, John Darjean ("Plaintiff" or "Darjean") is an overreaching intimidation tactic filled with meritless allegations, inaccurate statements, and baseless claims in an attempt to prevent an honest but unfortunate debtor from getting his fresh start in life. As set forth more fully herein, the Plaintiff has failed in every respect to meet the minimum requirements for a well-pled complaint, and as a result, the Adversary Proceeding must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

1

**BACKGROUND**

1. The Debtor is a 24-year old graduate student-athlete at the University of Colorado. Through his dedication and commitment to excellence, he has excelled both on the field and off the field, showing a promising possibility of a future career, but without a committed career path after graduation.[1]

2. Pre-petition, a cloud existed over the Debtor's future in the form of the default judgment entered in pre-petition litigation commenced by the Plaintiff against the Debtor when the Debtor was just fifteen years old. Since commencing the litigation, the Plaintiff has relentlessly pursued claims against the Debtor, and, taking advantage of time when the Debtor was unrepresented and uninformed about the status of pending litigation or any trial dates set, obtained a judgment in excess of $11.8 million against the Debtor.

3. As a result of the continued litigation and the subsequent collection efforts, the Debtor filed his voluntary petition for relief pursuant to Chapter 7 of the Bankruptcy Code on October 23, 2023, seeking to get his fresh start, free from the oppressive burdens of his debts that would otherwise impede his future and the rest of his life.

*History Between the Parties*

4. Prior to the Plaintiff commencing litigation against the Debtor, the Plaintiff, a former major league baseball player and longtime baseball coach, was employed as a security guard at Triple A Academy, a high school in Dallas, Texas that Shilo attended. *See* Complaint at ¶21, Ex. 7 to Complaint at p. 10.

5. In 2015, when Shilo was just fifteen years old, the Plaintiff cornered Shilo in the school lobby when he was on his phone with his mother under the pretense of attempting to take Shilo's phone away from him. Ex. 7 to Complaint at p. 12. When Shilo attempted to move away

---

[1] The Debtor is bringing this Motion based on the inadequacy of the allegations in the Complaint and the exhibits attached thereto. However, in order to allow the Court to fully understand and appreciate the history and relationship between the parties, the Debtor is including some additional facts that go beyond the Complaint and exhibits to fully describe the background. The Debtor asserts that even without consideration of these additional facts, the Complaint fails to plead sufficient factual allegations to support any of the Plaintiff's claims and must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

2

from and around the Plaintiff, the Plaintiff immediately became aggressive, grabbing Shilo's arm hard enough to leave marks. *Id.*

6. Shilo continued to try to get away from the Plaintiff, banging on the glass and the walls in an attempt to get someone's attention to help Shilo get away from the athletic adult who was assaulting Shilo in the lobby of his school. *Id.* at p. 12-13.

7. The Plaintiff kept Shilo pinned against the wall for over a minute, repeatedly banging him against the wall while Shilo struggled to get away from him before the Plaintiff "drop[ped]" him to the ground, continuing to hover over Shilo even as he laid on the floor to ensure that Shilo could not get up. *Id.*

8. Ms. Ruda Nash, the principal of FOCUS Learning Academy[2], and other teachers and coaches witnessed the attack and came to remove the Plaintiff, finally giving Shilo the ability to get off the floor and get away from the Plaintiff's relentless attack. *Id.*

9. Contrary to the Plaintiff's assertions that the Texas Department of Family and Protective Services ("TPS") determined that that Shilo "instigated the attack on [the Plaintiff] and was to blame[,]" TPS in fact reached the opposite conclusion. Complaint at ¶ 67 (allegations in Complaint), Ex. 7 to Complaint at p. 16 (findings of TPS).

10. TPS found that the Plaintiff acted with **unreasonable and unwarranted aggression**, exceeding the amount of force warranted and appropriate for a school security officer, and that there was "Reason to Believe that the fifteen year old child, Shilo Sanders, was inappropriately disciplined by the [Plaintiff] security guard at his school, FOCUS Learning Academy." Ex. 7 to Complaint at p. 16.

11. In addition to Shilo's and Mr. Darjean's own statements, the TPS Record included a written statement from Ms. Nash, detailing her eye-witness account of the Plaintiff's actions:

> I heard banging on the glass and saw Mr. Darjean pushing Shilo Sanders into the corner of the glass windows in the FLA gym foyer. Mr. Darjean had Shilo by the neck with both hands, hanging his head into the glass before throwing him on the ground and falling on top of him. I opened the glass foyer door to see Mr. Darjean choking Shilo with one hand; with the other, fighting for Shilo's phone. I was saying, "stop! stop!" as I tried to pull Mr. Darjean off of Shilo, but Mr. Darjean would not let go of his grips. Someone came to help pull Mr. Darjean off of Shilo who was saying, "I can't breathe!" repeatedly. I helped Shilo up and tried to get him to sit in

---

[2] Focus Learning Academy and Triple A Academy were related charter school sharing the same school complex.

3

the chair and breathe, but he was gasping and saying, "Call the police!" I went toward the FLA front desk toward the phone, but instead told a colleague to give me her phone. I went back into the foyer to get Shilo and guided him out of the FLA front door to the former Triple A lobby door. Shilo went straight to the desk phone and dialed 911.

*See Complaint*, Exhibit 7, TPS Record, at p. 14.

12. Multiple students who witnessed the incident corroborated Shilo's account of the Plaintiff's attack:

- "What I seen was the student didn't want to give the [Plaintiff] his phone so the [Plaintiff] kept on asking for it. Then the [Plaintiff] reached for it and [Shilo] pushed the adult and the [Plaintiff] began to push him and choked him. [Shilo] was yelling, "I can't breathe;" and was crying and yelling; and that's when adults came over and pulled the [Plaintiff] off of [Shilo]."

- "Shilo walked off while the [Plaintiff] was asking for his phone. He was about to hand it to [the Plaintiff], but then he walked off. Then the [Plaintiff] pulled him. Shilo tried to move away from the corner and the [Plaintiff] took [Shilo] down to the ground. Shilo started screaming for help and banging on windows because he couldn't breathe."

- "[The Plaintiff] pushed [Shilo] on the floor and choked him."

- "[The Plaintiff] was choking [Shilo] for the phone and the kid said you're choking me."

- "[Plaintiff] said give me the d*** phone and Shilo walked away and coach pulled his jacket and Shilo pulled away. [Plaintiff] grabbed him and pushed him on the wall and started choking him."

- "[The Plaintiff] was asking for his phone, so [Shilo] was trying to run and elbowed the [Plaintiff]. The [Plaintiff] started to choke [Shilo] and the[Plaintiff] slammed him into the glass wall. [Shilo] could barely breathe.

*See Complaint*, Exhibit 7, TPS Record, at p. 15.

13. The TPS Record also includes written statements that the school took during its investigation, including Mr. Darjean's own account, which is dramatically different than the allegations contained in the Complaint. Ex. 7 to Complaint at p. 14. Instead of the allegations that

4

the Debtor was the aggressor, in his account shortly following the incident, the Plaintiff confirmed that he restrained Shilo and "took him to the ground." Ex. 7 to Complaint, TPS Record, at p. 14.

14. The school further found in its investigation that the Plaintiff was in violation of policies by engaging in "inappropriate and excessive physical methods of discipline on [Shilo]" and immediately terminated his employment. Ex. 7 to Complaint at p. 16.

15. Shilo recovered from the Plaintiff's attack and was able to continue his education, but it was not long after the Plaintiff's physical attack occurred that the Plaintiff then began his litigation attack against the Debtor and his family members.

### *Events Leading to Bankruptcy Filing*

16. In June 2016, the Plaintiff initiated a lawsuit in Dallas, Texas ("State Court Case") against Shilo and his parents for his alleged injuries. Ex. 1 to Complaint at p. 3. The account given by the Plaintiff in his Complaint in the State Court case differed substantially from the account of his actions against Shilo given in 2015.

17. The State Court Case progressed over a number of years, and the claims against Shilo's parents were dismissed. *See generally* Ex. 1. The Plaintiff relentlessly pursued the claims against Shilo who, for the first two years of the lawsuit, was a minor. *Id.*

18. The State Court Case was originally set for trial in December 2019, but was subsequently continued on the Plaintiff's request until June 2020. *Id.* at p. 54.

19. In April 2020, Shilo, an undergraduate college student at the time, could no longer afford the attorney fees he was incurring in the protracted litigation with the Plaintiff. As a result, Shilo's attorneys withdrew in April 2020, leaving Shilo unrepresented in the action. The trial that was originally set for June 2020 was also vacated at that time. *Id.*

20. Nothing occurred in the case for almost a year until April 2021, when a trial was reset for May 2021 on the request of the Plaintiff. The docket for the State Court Case evidences that the Notice of Trial appears to have been sent to Shilo at his former student housing, but was returned as undeliverable. *Id.* at 55.

21. At some time thereafter, the trial set for May 2021 was vacated and reset for a different date. A subsequent Notice of Trial sent to Shilo was similarly returned as undeliverable, and Shilo remained unaware of the trial settings by the Plaintiff. *Id.* at 55-56.

22. In July 2021, the Plaintiff again continued the trial, and again the Notice of Trial for the new trial date was returned as undeliverable. *Id.*

23. In October 2021, counsel for the Plaintiff withdrew, and the trial was once again continued. As with the notices that had been sent to Shilo for the prior six (6) months, a new Notice of Trial was once again returned as undeliverable. *Id.* at 56-57.

24. In March 2022, a trial was convened in the State Court Case without Shilo's knowledge or involvement. Following the State Court convening the trial, a form of judgment was submitted by the Plaintiff and his workers' compensation insurer and was entered by the state Court without any further notice, knowledge, or opportunity to present a defense by Shilo, including the existence of pre-existing substantial injuries resulting from the Plaintiff's prior career as a major league baseball player. The total amount of the judgment was in excess of $11.8 million.[3] *Id.* at 57-60.

25. Shilo remained unaware of the judgment until 2023, when the Plaintiff was able to locate new counsel to undertake collection efforts, beginning with seeking the appointment of a post-judgment receiver. *Id.* at 60.

26. Given the size of the judgment and the fact that Shilo was an undergraduate college student looking towards graduate programs, the creation of a post-judgment receivership would have a permanent effect on his ability to start his life after graduation, and would likely result in the Debtor remaining subject to collection efforts from the Plaintiff for the rest of his life.

27. As a result, the Debtor filed his voluntary petition for relief pursuant to Chapter 7 of the Bankruptcy Code to allow him to get a fresh start, free from the oppressive burden of his debts.

*Post-Bankruptcy Filing Events*

28. Since the filing of his Chapter 7 Bankruptcy Case, the Debtor has undertaken extensive efforts to comply with all Orders entered in the main case and cooperate fully with the Chapter 7 Trustee.

---

[3] The Plaintiff states that the prior judgment "should be given preclusive effect in this Adversary Proceeding." Not only is there no basis to assert that the State Court Case should be given preclusive effect in *any* Adversary Proceeding, as, among other reasons, the claims were not actually litigated, but it is particularly puzzling how the Plaintiff could anticipate the State Court Litigation having a preclusive effect in this Adversary Proceeding, as the claims asserted in this Adversary Proceeding bear absolutely no resemblance to the claims asserted in the State Court Case.

29. In addition to attending his Section 341 Meeting of Creditors, the Debtor voluntary turned over $210,000 in non-exempt assets without further order of the Court, has fully cooperated in connecting the Chapter 7 Trustee with professionals who aid him in managing his business affairs to ensure that the Trustee is receiving complete and accurate information, and is working with professionals employed by the trustee to coordinate an inspection of his assets.[4]

30. Contrary to the assertions in the Complaint, the Debtor was even willing to cooperate with a Rule 2004 examination from the Plaintiff had one been filed. Counsel for the Debtor had conferred with counsel for the Plaintiff regarding the scope of a potential 2004 examination, identifying approximately three areas of concern on a list of twenty topics and document requests that would need to be addressed and narrowed and/or subject to a protective order. Despite such conferrals, no motion seeking a Rule 2004 examination was ever filed and no order authorizing or requiring a 2004 examination was ever entered.

31. Despite the Debtor's clear compliance with the Bankruptcy Code, the Plaintiff now seeks to deny the Debtor his discharge with no factual allegations to support the claims asserted in the Complaint, and this Adversary Proceeding must therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## LEGAL ARGUMENT

### *Standard for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)*

32. To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) (made applicable by Fed. R. Bankr. P. 7008).

33. Pursuant to Rule 12(b)(6), made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7012, a claim should be dismissed if, even accepting the allegations as true, the complaint does not plausibly state a claim for relief and there is no set of facts that can be proven to support the claim and entitle plaintiff to relief.

34. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must include "sufficient factual matter, accepted as true, to 'state a

---

[4] Notably, the Chapter 7 Trustee did not bring his own claims under Section 727, nor did he join in the present claims. Notwithstanding the Trustee filing his Motion for Turnover, the Debtor has remained cooperative and responsive to all requests from the Chapter 7 Trustee, including scheduling the inspection of his apartment.

claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, a complaint must do more than raise a "sheer possibility that a defendant has acted unlawfully." *Id.* at 678.

35. Where the facts in the complaint allow a court to infer no more than "the mere possibility of misconduct," the complaint has not met its burden to show that the plaintiff is entitled to the relief sough. *Id.* at 679, 129 S.Ct. 1937. Said another way, plaintiffs must nudge their claims "across the line from conceivable to plausible[.]" *See Twombly*, 550 U.S. at 570.

36. Where a complaint contains claims based on fraud, a higher standard must be met, and fraud must be pled with particularity. Fed. R. Civ. P. 9(b), incorporated through Fed. R. Bankr. P. 7009. Although malice and intent may be alleged generally, facts regarding the time, place, and content of any alleged misrepresentations must be offered. *See Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000). Claims for actual fraud asserted under either 11 U.S.C. § 727(a)(2) or (4) are subject to the heightened pleading requirements of Rule 9(b).

### *Plaintiff's Claim Pursuant to 11 U.S.C. § 727(a)(2) is Subject to Dismissal Pursuant to Rule 12(b)(6)*

37. Pursuant to 11 U.S.C. § 727(a)(2), a debtor is not entitled to receive a discharge if the debtor, with the intent to hinder, defraud, or delay creditors, transfers has "transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed— (A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition[.]"

38. Because the nature of claims under section 727(a)(2) relate specifically to fraudulent conduct, they are subject to the heightened pleading standard under rule 9(b), and the plaintiff must plead claims with particularity, including the "time, place, and contents of the alleged fraudulent [transfer]" as well as the identity of the transferee and the consequences of the transfer. *See Koch*, 203 F.3d at 1236.

39. The Complaint fails to meet the particularity requirements of Rule 9(b). In conclusory allegations, the Complaint generally states that "On information and/or belief . . . Shilo (i) has transferred, removed, destroyed, mutilated, or concealed property of Shilo (ii) within one year before the Petition Date (iii) with the intent to hinder, delay, or defraud Darjean, any other creditors, and/or the Chapter 7 Trustee."

8

40. This broad and conclusory allegation falls well below the heightened pleading standard required under Rule 9(b). There is no identification of what property is alleged to have been transferred, no allegation of what property no longer exists, no identification of when the alleged transfer occurred, and no mention of any alleged transferee. The Plaintiff's reliance on these broad and conclusory allegations falls well below the standard required and for that reason should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

41. The Plaintiff alleges the existence of a continuing concealment that is pled "[o]n information and belief", without identifying what is purportedly concealed.

42. Even looking beyond the allegations in the first claim for relief itself, the Complaint still falls well short of the heightened pleading standard of Rule 9(b).

43. For example, the Plaintiff broadly alleges that the Debtor transferred Name-Image-Likeness ("NIL") deals to his company, Big 21, LLC. These allegations misrepresent the Debtors **unrebutted testimony** during his Section 341 Meeting of Creditors, and fails to appreciate the difference between a company and an individual.

44. At the Meeting of Creditors, the Debtor testified that all of the NIL agreements were with his company, Big 21, LLC, and all funds from those agreements went through the Big 21, LLC accounts. As the owner of the company, the Debtor received funds from the company, but the mere fact of receiving funds from the company does not create a transfer.

45. No where in the Complaint is there a single allegation detailing: 1) a specific NIL contract transferred; 2) the date on which such transfer occurred; 3) or the effect of such transfer.

46. Instead, the transcript[5] of the Meeting of Creditors attached to the Complaint makes it clear that the NIL agreements were always done in the name of Big 21, LLC and that he had no contracts with Big 21, LLC as it is a single member LLC. This does not create a transfer pursuant to the plain language of section 101(54), and further cannot constitute a concealment of an asset, as the Debtor's interest in Big 21, LLC and his interest in SS21, LLC were disclosed and became assets of the estate.

47. The Complaint further seems to imply without asserting without asserting any factual basis that a media article claiming that Shilo and his brother were planning to purchase his

---

[5] The "transcript" attached to the Complaint is not a certified transcript and even a cursory glance reveals multiple errors in the transcription. The Debtor is relying on the transcript for the purposes of this Motion, but such reliance is not a waiver, release, or agreement that the transcript is true, correct or accurate, nor a waiver of the Debtor's right to contest the use of an uncertified transcript in the future by the Plaintiff.

father a house is sufficient to support a denial of discharge. Specifically, the Complaint states that this "raises a plethora of questions regarding the resources of Shilo used in the acquisition, whether those resources were disclosed in the schedules or at the creditors meeting, and the timing of the deployment of such resources to acquire the property." [*See* Complaint at ¶¶ 154-155.]

48. As with the rest of the Complaint, this allegation falls woefully short of the standard required to support a claim for objection to discharge pursuant to section 727(a)(2). This allegation is based on pure conjecture and media "hype", without have any basis in fact and reality.[6] The Complaint makes no attempt to identify what property has been purchased, nor can it because there is no contract to purchase *any* house by the Debtor or his companies.[7] Moreover, even if there was a contract for a purchase of real property, which there is not, the Plaintiff puts forth no allegation that any funds used would have been pre-petition assets or assets of the estate, versus funds and assets acquired post-petition.

49. The Debtor has taken no action to hide, transfer, destroy, or mutilate assets, either on a pre- or post-Petition Date basis, and even went so far as to voluntarily turnover over $210,000 to the Trustee without waiting for further order of the Bankruptcy Court, or even a stipulation for turnover.

50. Accordingly, because the Plaintiff's Complaint falls well short of establishing a claim under 11 U.S.C. § 727(a)(2), the Plaintiff's first claim for relief must be dismissed with prejudice to refiling.

***Plaintiff's Claim Pursuant to 11 U.S.C. § 727(a)(3) is Subject to Dismissal Pursuant to Rule 12(b)(6)***

51. 11 U.S.C. § 727(a)(3) precludes a discharge if:

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such

---

[6] In a subsequent appearance on Undisputed, a YouTube podcast covering football news, the Debtor's father confirmed that his sons did not buy him a house and that he would not have "the audacity to allow my kids to buy me a mansion unless they're in the NFL already." https://youtu.be/qVUTg2lVyCc?si=DLr1Dgf1Rx5c7alJ

[7] The Plaintiff goes so far as to suggest that the Trustee should place a lis pendens on "the property in question." Given that there isn't even a sale contract for a home and the home appearing in the hyped YouTube video remains on the market, making such an assertion seems to invite the Chapter 7 Trustee to find themselves in litigation with a non-debtor person or entity who is trying to sell their property and who has no interaction with the Debtor.

        act or failure to act was justified under all of the circumstances of the case.

52. To state a prima facie case under § 727(a)(3), the plaintiff must show that the debtor failed to maintain and preserve adequate records and that the failure made it *impossible* to ascertain the debtor's financial condition and *material* business transactions. *Gullickson v. Brown*, 108 F.3d 1290, 1295 (10th Cir. 1997). "The scope of the debtor's duty to maintain records depends on the nature of the debtor's business and the facts and circumstances of each case." *Bailey v. Ogden (In re Ogden)*, 1999 Bankr. LEXIS 437, at *15 (10th Cir. B.A.P. Apr. 30, 1999).

53. The Complaint alleges generally that because the Debtor's testimony at the Meeting of Creditors was "confusing", the Debtor has failed to maintain and produce sufficient records of his operations, sufficient to allow parties to discern his financial condition.

54. Even accepting the allegations in the Complaint as true, one creditor's confusion is not sufficient to deny the Debtor his discharge.

55. The allegations in the Complaint do nothing more than establish that the Debtor relies heavily on his agents, attorneys, and other professionals. At his Meeting of Creditors, the Debtor testified that he relies on his manager, that he has an attorney who handles all of the NIL agreements and negotiations related to the NIL agreements, and that he has an accountant who helps him with his tax returns. He further testified that he relies on professionals to handle all things related his businesses. This is not surprising, particularly given the fact that the Debtor is a 24-year old graduate student with no prior experience running a business. Indeed, the Debtor's reliance on his professionals is necessary to maintain adequate records for his business dealings and managing his business affairs particularly because NIL deals are relatively new, having been in existence for approximately three years, and the NIL rules and agreements are constantly evolving and adapting over time. To expect that a 24-year old student would be able to navigate a complex world of contracts and business finances without the assistance of professionals is patently unreasonable.

56. The only other allegations the Plaintiff attempts to use in support of his claim under section 727(a)(3) is that the Debtor did not produce documents to the Plaintiff. This allegation clearly fails to establish a plausible claim for relief, and does nothing more than establish that the Plaintiff failed to file a Motion for the Rule 2004 examination that he was contemplating

conducting. The allegations thus do not establish that the Debtor does not have business records, just that the Plaintiff failed to request use the tools readily available to him to request them.

57. Because the allegations in the Complaint, even if accepted as true, are insufficient to support a claim pursuant to 11 U.S.C. § 727(a)(3), the Plaintiff's second claim for relief must be dismissed.

***Plaintiff's Claim Pursuant to 11 U.S.C. § 727(a)(4) is Subject to Dismissal Pursuant to Rule 12(b)(6)***

58. The Complaint contains nothing more than mere conclusory allegations that Shilo "has undertaken one or more of the offenses described in Section 727(a)(4)."

59. 11 U.S.C. § 727(a)(4) provides that "the debtor knowingly and fraudulently, in or in connection with the case—

> (A) made a false oath or account;
> (B) presented or used a false claim;
> (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or
> (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

60. As with the claim asserted under section 727(a)(2), the Plaintiff's third claim for relief is subject to the heightened pleadings standard under Rule 9(b). Applying the heightened pleading standard, the Complaint fails to include any allegations sufficient to support a claim under section 727(a)(4).

61. Although the third claim for relief generally states that Shilo has committed one or more of the offenses listed in Sections 727(a)(4)(A)-(D), the Complaint only attempts to explain how two of the enumerated subsections are fulfilled—subsections (A) and (D).

62. To establish a claim for denial of a discharge under 11 U.S.C. § 727(a)(4)(A), the plaintiff must allege that the debtor: 1) made a statement under oath; 2) the statement was false; 3) the debtor knew the statement was false; 4) the statement was made with fraudulent intent; and 5) the statement related materially to the bankruptcy case. *Blackwell Oil Co. v. Potts (In re Potts)*, 501 B.R. 711, 720 (Bankr. D. Colo. 2013).

63. To establish a claim for denial of discharge under 11 U.S.C. § 727(a)(4)(D), a debtor may not receive a discharge if the debtor fraudulently fails to turn over records in connection with the bankruptcy case to "an officer of the estate entitled to receive possession."

64. The Complaint fails set forth any allegation that could support a claim for relief pursuant to Section 727(a)(4).

65. Paragraphs 179 and 180 of the Complaint simply state that Shilo "has made a false oath and/or account by [sic] through [sic] and the schedules and SOFA filed in this case" and "by and through the testimony of Shilo and/or other disclosures made for or on behalf of Shilo in the meeting of creditors." These broad and conclusory allegations are so devoid of specifics as to fail to provide any support for the claim for relief.

66. Looking to the broader Complaint, the Plaintiff fails to allege any facts that, even if taken as true, could support a claim under Section 727(a)(4). The Complaint contains numerous allegations that the Debtor has failed to disclose his various NIL agreements and the trademark for "Headache Gang" while simultaneously acknowledging that the NIL agreements and the trademark are owned by Shilo's companies and further acknowledging that Shilo's business interests are listed as assets on the Debtor's schedules.

67. The transcript of the Meeting of Creditor further includes the Debtor's testimony that there is a trademark for "Headache Gang" which the Plaintiff asserts should be listed on his schedules, that the trademark was filed with the assistance of an attorney, that he's not "sure of the process", and that the trademark is owned by SS21, LLC. [Complaint, Exhibit 16, at p. 51-52,

68. *See In re Albright*, 291 B.R. 538, 540 (Bankr. D. Colo. 2003) ("Upon the Debtor's bankruptcy filing, she effectively transferred her membership interest to the estate."); *see also In re Strak*, 2018 Bankr. LEXIS 3936, at * 4 (Bankr. D. Wyo. Dec. 11, 2018)(recognizing that the corporate assets do not become as asset of an individual bankruptcy estate by mere virtue of their ownership interest in the company).

69. The Plaintiff improperly conflates the individual with his entities in order to assert that the Debtor had an obligation to list the assets of the companies on his individual schedules, allegations which the Plaintiff acknowledges are factually and legally incorrect, and such allegations therefore cannot support a claim under section 727(a)(4).

70. Nor does the Complaint have any allegations that could support a claim that the Debtor failed to turn over records to the Chapter 7 Trustee, as the Debtor has provided the Chapter

13

7 Trustee with access to professionals and provided substantial records regarding his finances and the finances of the business.

71. The Plaintiff has failed to allege sufficient factual allegations to establish a claim under section 727(a)(4), particularly under the heightened pleading standard of Rule 9(b), the Plaintiff's third claim for relief must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

***Plaintiff's Claim Pursuant to 11 U.S.C. § 727(a)(5) is Subject to Dismissal Pursuant to Rule 12(b)(6)***

72. Pursuant to 11 U.S.C. § 727(a)(5), the debtor must have "failed to explain satisfactorily . . . any loss of assets or deficiency of assets to meet the debtor's liabilities." To establish a claim, the plaintiff "must allege that the debtor no longer has assets which he previously owned and that he has failed to explain the loss." *In re Orr*, 2011 WL 5854712, at *4 (Bank. D. Colo., 2011).

73. The Plaintiff has not alleged a single fact in the Complaint that, even if taken as true, can support a claim under section 727(a)(5). Nowhere in the Complaint does the Plaintiff assert that there has been *any* loss of assets, let alone a loss that remains unexplained.

74. Without any factual allegations to support a claim under section 727(a)(5), the Plaintiff's fourth claim for relief must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

***Plaintiff's Claim Pursuant to 11 U.S.C. § 727(a)(6) is Subject to Dismissal Pursuant to Rule 12(b)(6)***

75. Under § 727(a)(6), a debtor may be denied a discharge, in relevant part, if the debtor "has refused, in the case to obey any lawful order of the court."

76. The Complaint simply alleges that Count 5 is being alleged simply to preserve it in the event Shilo violates § 727(a)(6) in the future.

77. Article III of the United States Constitution limits the jurisdiction of federal courts to actual cases or controversies. U.S. Const. Art. III, § 2, cl. 1. Ripeness is one of the justiciability doctrines courts use to assess whether an actual case or controversy exists. *In re Martino*, 2012 WL 1439091, at *3 (Bank. D. Colo., 2012).

78. "A claim is not ripe if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *In re Zohar III, Corp.*, 631 B.R. 133, 197 (Bank. D. Del., 2021) (quoting *Texas v. U.S.*, 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998)).

When a case is not yet ripe under Article III, it must be dismissed for lack of subject matter jurisdiction. *Biddison v. City of Chicago*, 921 F.2d 724, 726 (7th Cir. 1991).

79. Because the Plaintiff's fifth claim for relief rests upon contingent future events that may not occur, it is not ripe for adjudication and should be dismissed for lack of subject matter jurisdiction under Article III of the U.S. Constitution.

***80.*** Accordingly, because the Plaintiff's fifth claim for relief is not ripe for adjudication and is not supported by any factual allegations, the Plaintiff's fifth claim for relief must be dismissed.

### *Plaintiff's Claim For Attorney Fees is Subject to Dismissal Pursuant to Rule 12(b)(6)*

81. The Plaintiff further asserts a claim seeking recovery of his attorneys' fees, but has no legal basis to do so.

82. In *Busch v. Hancock*, 369 B.R. 614 (10th Cir. BAP 2007), the Tenth Circuit Bankruptcy Appellate Panel explained the framework for considering attorney's fees requests:

> Under the "American Rule" applied in federal litigation, a prevailing party is not ordinarily entitled to collect attorney's fees from his opponent. *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 247, 257, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). This general rule applies to bankruptcy litigation. *In re Reid*, 854 F.2d 156, 161-62 (7th Cir. 1988); *All Am. of Ashburn v. Fox (In re Fox)*, 725 F.2d 661, 662 (11th Cir. 1984). However, there are two major exceptions to the "American Rule": (1) the rule is abrogated when the parties have entered a contract that shifts attorney's fees, and (2) the rule is abrogated when a statute provides for fee shifting. Bennett v. Coors Brewing Co., 189 F.3d 1221, 1237-38 (10th Cir.1999).

369 B.R. at 624-25.

83. There are no contracts between the parties, and therefore no contractual ability to shift fees onto the Debtor. There are also no statutory provisions allowing the Plaintiff to shift his fees onto the Debtor.

84. Accordingly, because there is no legal basis for the claim, the Plaintiff's sixth claim for relief must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### *Violation of Protective Order and Reservation of Rights*

85. As the Plaintiff is aware, a Protective Order was entered in the State Court Case, a copy of which is attached hereto as Exhibit A.

86. The Protective Order expressly prohibits the public release of any documents or information obtained or generated in the case, including deposition testimony and/or transcripts, medical information and x-rays, or any other information in connection with the case. It further expressly prohibits the parties from uploading any deposition testimony or transcripts or any other information generated, produced, or obtained in connection with the case to any social media accounts.

87. Despite the existence of the Protective Order, the Plaintiff has continuously violated the Protective Order including uploading portions of the deposition testimony to his Instagram account[8] and including medical records *in the Complaint filed in this Adversary Proceeding and another Adversary Proceeding*.

88. The Debtor reserves all rights with respect to enforcement of the Protective Order, including injunctive relief and seeking damages as may be applicable.

**[remainder of page intentionally left blank]**

---

[8] https://www.instagram.com/p/CmbjcGGIopR/

## CONCLUSION

Shilo is the honest but unfortunate debtor looking to get his fresh start in life, free from the oppressive burden of his debts, including the default judgement to the Plaintiff. It is the Plaintiff's obligation to support his claims with well-pled factual allegations, sufficient to establish that the asserted claims are at least plausible. It is an obligation that the Plaintiff has failed to meet with each and every single one of his claims for relief. The Plaintiff relies wholly on broad, sweeping, conclusory allegations rife with baseless assumptions and misrepresentations to support his claims, but has no factual or legal support sufficient to meet his burden under the Rules of Civil Procedure. Absent sufficient factual allegations, the claims cannot proceed and this Adversary Proceeding must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

Dated: February 28, 2024  **KUTNER BRINEN DICKEY RILEY, P.C.**

*/s/ Keri L. Riley*
Keri L. Riley, #47605
1660 Lincoln Street, Suite 1720
Denver, CO 80264
Tel: (303) 832-2400
Email: klr@kutnerlaw.com
*- and -*

**BARNES & THORNBURG LLP**

Victor D. Vital (of counsel)
2121 N. Pearl St., Suite 700
Dallas, TX 75201-2469
Tel: (214) 258-4124
Email: Victor.Vital@btlaw.com
*- and -*
James E. Van Horn (of counsel)
555 12th St NW, Suite 1200
Washington, DC 20004
Tel: (202) 371-6351
Email: JVanHorn@btlaw.com

***Attorneys for Defendant Shilo Dion Sanders***