# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO
## The Honorable Michael E. Romero

| | |
|---|---|
| In re:<br><br>Shilo Dion Sanders,<br><br>Debtors. | Case No. 23-14859 MER<br><br>Chapter 7 |
| John Darjean,<br><br>Plaintiff,<br><br>v.<br><br>Shilo Dion Sanders,<br><br>Defendants. | Adversary No. 24-1023 MER |

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

THIS MATTER comes before the Court on the Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Bankr. P. 7012(b)(6) filed by Shilo Dion Sanders, Debtor/Defendant ("**Sanders**") and the response filed by John Darjean, Plaintiff ("**Darjean**"). In his Complaint, Darjean alleges Sanders's discharge should be denied under 11 U.S.C. § 727(a)(2), (a)(3), (a)(4), (a)(5) and (a)(6).[1] Sanders contends all these claims should be dismissed under Fed. R. Civ. P. 12(b)(6), for failure to state a claim. Darjean argues his Complaint is sufficient and asks the Court to deny dismissal or, in the alternative, give him leave to amend his Complaint.

## BACKGROUND

Darjean has a $11 million prepetition state court judgment against Sanders and is one of only four creditors listed on Sanders's schedules. Sanders is a college student and athlete. He currently plays football for the University of Colorado. He filed bankruptcy shortly after Darjean initiated collection efforts.

---

[1] All references to "section" or "§" shall refer to Title 11, United States Code, unless expressly stated otherwise. All references to "rules" shall refer to the Federal Rules of Civil Procedure or Federal Rules of Bankruptcy Procedure, as applicable.

# ANALYSIS

## A.     Standard of Review

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept all well-pled factual allegations in the complaint as true and construe the complaint in favor of the plaintiff.[2]  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[3]  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[4]  The critical question is, "assum[ing] the truth of all well-pleaded facts . . . and draw[ing] all reasonable inferences therefrom in the light most favorable to the plaintiffs," whether the complaint "'raise[s] a right to relief above the speculative level.'"[5]

Sanders argues the Court need not accept all the facts alleged in the Complaint as true if those facts are contradicted by exhibits attached to the Complaint. Specifically, Sanders points to a transcript of the meeting of creditors Darjean attached to the Complaint.  Normally, a motion to dismiss is determined based solely on the allegations contained within the four corners of the complaint.[6]  There are exceptions to this rule.  A court may consider exhibits attached or incorporated by reference into the complaint, if the authenticity of the exhibits is not questioned.[7]  Where an allegation in the complaint is "clearly contradicted" by facts in an attached exhibit, the exhibit will ordinarily control.[8]  This doctrine must be applied with caution, however, keeping in mind its purpose is to weed out non-meritorious claims for which a trial is not necessary.[9]  The doctrine is only triggered upon a threshold determination of a "contradiction," which only exists when the facts in the exhibit and the complaint are

---

[2] Ash *Creek Mining v. Lujan*, 969 F.2d 868, 870 (10th Cir. 1992).

[3] *Duran v. Carris*, 238 F.3d 1268, (10th Cir. 2001) (quotation omitted).

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[5] *Dias v. City & County of Denver,* 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555).

[6] *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) ("The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true.").

[7] *Smith v. U.S.*, 561 F.3d 1090, 1098 (10th Cir. 2009); *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017).

[8] *Estate of Ronquillo v City & County of Denver*, 720 Fed. App'x 434, 437 (10th Cir. 2017) (citing *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013)).

[9] *Flannery v. Recording Indus. Assoc. of Am.*, 354 F.3d 632, 638 (6th Cir. 2004).

"inherently inconsistent."[10] Discrepancies which merely "create an issue of credibility or go to the weight of the evidence" would not trigger the doctrine because "credibility and weight are issues of fact for the jury, and we must be careful not to usurp the jury's role."[11]

In this case, Darjean attached a 106-page "transcript" of the entire meeting of creditors to the Complaint. That transcript is uncertified and apparently computer generated.[12] The transcript does not identify speakers by name and contains numerous, obvious mistakes. The Court does not find the transcript sufficiently reliable or authenticated to be used as an exhibit.[13] Even if the Court did consider the transcript, Sanders's testimony at the meeting of creditors does not create the sort of "clear contradiction" that would cause the Court to ignore factual allegations of the Complaint. To the extent the Court can identify Sanders's testimony in the transcript, it is often imprecise and lacking in detail. At best, his testimony creates issues of credibility or weight, which the Court will determine at trial. Thus, the Court will assume the allegations in the Complaint are true for purposes of determining the Motion to Dismiss.

B.   **Alter Ego and Piercing the Corporate Veil**

One of the primary issues in this case is Sanders's treatment of his Name Image Likeness ("NIL") rights as a college athlete. Sanders contends he earns money for use of his NIL rights through his wholly-owned limited liability company, Big 21, LLC.[14] Sanders also owns a second company called SS21, LLC. In his Complaint, Darjean asserts Sanders failed to list numerous assets on his statements and schedules in this case, including the NIL rights. He also argues the details concerning the NIL rights and how those rights were transferred and/or are held through Big 21, LLC have not been adequately disclosed.

Sanders asserts these arguments "fail[] to appreciate the difference between a company and an individual."[15] Sanders argues all his NIL contracts are done through Big 12, LLC and thus do not concern property of Sanders's bankruptcy estate as required for Darjean's claims under § 727(a)(2) and (a)(4)(A). Darjean responds by

---

[10] *Id.*; *Blackmore v. Carlson*, 574 F.Supp.3d 1012, 1025-26 (D. Utah 2021) (declining to consider video recording attached to complaint where video did not clearly contradict allegations in complaint).

[11] *Flannery*, 354 F.3d at 638. Of course, the Court, not a jury, is the factfinder in this proceeding.

[12] Complaint, ECF No.1, at Ex. DAR016 (stating "Transcript by Rev.com" and referring to "Speakers 1-8" without identifying them).

[13] Fed. R. Evid. 901(a); *Boldridge v. Tyson Foods, Inc.*, 280 Fed. Appx. 723, 725, (10th Cir. 2008) (affirming exclusion of unauthenticated transcripts in deciding motion for summary judgment). While Sanders attempts to rely on the transcript in his Motion to Dismiss, he also complains it is unreliable and reserves the right to object to its use future proceedings. *See* Motion to Dismiss, ECF No., 4, at n.5.

[14] Motion to Dismiss, ECF No. 4, ¶¶ 43-46.

[15] *Id.* ¶ 43.

alleging Sanders's wholly-owned LLCs are his alter egos whose corporate veils should be pierced.[16] Under these theories, assets of the LLCs would be considered assets of Sanders for purposes of determining the § 727 claims.

As a general rule, an individual debtor who holds an interest in a corporate entity does not have a direct ownership interest in the corporate entity's assets and, as such, those assets are not included in the individual debtor's bankruptcy estate.[17] This means, without more, property of a corporate entity, even one completely owned by the debtor, cannot constitute the debtor's property for purposes of a § 727(a) claim.[18] Courts disagree on whether a debtor's transfer or concealment of property owned by an alter ego entity states a claim under § 727(a)(2) or (a)(4).[19] Courts that allow application of alter ego or veil piercing generally do so on equitable grounds to address situations where a debtor has utilized corporate entities he or she dominates to fraudulently hide assets from creditors.[20] Courts that refuse to apply alter ego or veil piercing cite various reasons, including the lack of textual support in § 727, state law limitations, and the particular circumstances of the case.[21]

There is no Tenth Circuit precedent directly on point. The closest is the case of *In re Thurman*, where the Tenth Circuit considered whether an individual debtor's transfer of corporate property could serve as the basis for a § 727(a)(2) claim.[22] In that case, the debtor owned 50% of the shares of the corporation and pledged those shares as security for a loan. Later, the corporation transferred most of its assets to a subsidiary, leaving the pledged stock worthless. The creditor argued § 727(a)(2)(A) should apply because the debtor had an equitable interest in the corporate assets that were transferred. The Tenth Circuit rejected this contention, holding "Congress intended to limit the reach of § 727(a)(2)(A) only to those transfers of property in which

---

[16] Complaint, ECF No. 1, ¶¶ 145-47.

[17] *Gallan v. Bloom Bus. Jets, LLC*, 2020 WL 4904580 (D. Colo. Aug. 20, 2020) ("The fact that an individual debtor holds an interest in another entity does not give that individual a direct ownership interest in the assets owned by the other entity.").

[18] *Mcorp Mgmt. Solutions, Inc. v. Thurman (In re Thurman)*, 901 F.2d 839, 841 (10th Cir. 1990).

[19] *Vara v. Motil (In re Motial)*, 2023 WL 187156, at *4 (Bankr. N.D. Ohio January 13, 2023) (describing split of authority).

[20] *E.g.*, *Serio v. DiLoreto (In re DiLoreto)*, 266 Fed. App'x 140, 142-43 (3d Cir. 2008); *The Patriot Group, LLC v. Fustolo (In re Fustolo)*, 597 B.R. 1, 54-56 (Bankr. D. Mass. 2019); *Neary v. Mosher (In re Mosher)*, 417 B.R. 772, 780 (Bankr. N.D. Ill. 2009); *Blomberg v. Riley (In re Riley)*, 351 B.R. 662, 670-72 (Bankr. D. Wis. 2006); *Dulbina of Am., Ltd. v. Sklarin (In re Sklarin)*, 69 B.R. 949, 954 (1987)

[21] *E.g.*, *Moyer v. Greer (In re Geer)*, 522 B.R. 365, 393 (Bankr. N.D. Ga. 2014); *West Valley Med. Partners, LLC v. Shapow (In re Shapow)*, 599 B.R. 51, 74-76 (2019); *Vara v. Motil (In re Motial)*, 2023 WL 187156, at *5 (Bankr. N.D. Ohio January 13, 2023); *Vara v. Motil (In re Motial)*, 2023 WL 3991639 (Bankr. N.D. Ohio June 13, 2023).

[22] *In re Thurman*, 901 F.2d at 840-41.

the debtor has a direct proprietary interest."[23] The parties in *Thurman* did not raise, and the Tenth Circuit did not address, alter ego or veil piercing arguments, likely because the debtor did not have a controlling interest in the corporation.[24]

The Tenth Circuit Bankruptcy Appellate Panel ("BAP") addressed application of the alter ego doctrine to a § 727(a)(2) claim in *In re Butler*.[25] The *Butler* case was unique in that, prior to the petition date, a state court had determined the debtors to be alter egos of their wholly owned corporation. The bankruptcy court held it must give collateral estoppel effect to the state court's alter ego ruling in determining the § 727(a)(2) claim. However, the bankruptcy court also determined the creditor had presented sufficient evidence, independent of the state court ruling, to justify piercing the corporate veil.[26] On appeal, the debtors argued alter ego should not be used in the § 727(a)(2) context to merge the identity of the individual and the corporation. The BAP disagreed, holding "[i]t is also a settled principle of law that when one legal entity is but an instrumentality or alter ego of another, by which it is dominated, a court may look beyond form to substance and may disregard the theory of distinct legal entities in determining ownership of assets in a bankruptcy proceeding."[27] The BAP ultimately affirmed denial of the debtor's discharge under § 727(a)(2) and (a)(4), based in part on transfers and concealment of the alter ego corporation's assets.

This Court is unwilling, at this stage of the proceedings, to rule out application of the alter ego or veil piercing doctrines in the § 727(a) context. The Complaint contains sufficient allegations that Sanders's companies function as his alter egos and that the corporate veils of the LLCs should be pierced. Although neither party has cited applicable state law, Colorado law, appears to generally recognize both alter ego and veil piercing, or more accurately, outside reverse piercing, as legitimate remedies.[28] The Court therefore denies Sanders's request to dismiss Darjean's § 727(a)(2) claim purely on the basis it might involve assets owned by Sanders's LLCs. However, the Court cautions Darjean that reverse piercing is considered an "extraordinary remedy" and he faces a high burden to demonstrate all necessary factors at trial.[29]

---

[23] *Id*. at 841.

[24] *Id.* at 842 (noting debtor was one of three of the corporation's directors, and "could not transfer [corporate] assets on his own authority and for his own purposes.").

[25] *Freelife Int'l, LLC v. Butler (In re Butler)*, 2007 WL 866660, *4-5 (10th Cir. BAP March 19, 2007).

[26] *Freelife Int'l, LLC v. Butler (In re Butler)*, 377 B.R. 895, 919 (Bankr. D. Utah 2006), *aff'd*, 2007 WL 866660 (10th Cir. BAP March 19, 2007).

[27] *Id*. at *5 (quoting *Blomberg v. Riley (In re Riley)*, 351 B.R. 662, 671 (Bankr.E.D.Wis.2006)).

[28] *Connolly v. Englewood Post No. 322 Veterans of Foreign Wars of the U.S., Inc. (In re Phillips)*, 139 P.3d 639, 644, 646 (Colo. 2006) ("Reverse piercing occurs when a claimant seeks to hold a corporation liable for the obligations of an individual shareholder."). The same appears to be true under Texas law. *See The Cadle Co. v. Brunswick Homes, LLC (In re Moore)*, 379 B.R. 284, 295 (Bankr. N.D. Tex. 2007).

[29] *Connolly,* 139 P.3d at 646-47 ("Only when a claimant makes a clear showing of each factor may the

    **C.**    **Section 727(a)(2)**

Sanders argues Darjean has failed to state a claim under § 727(a)(2). The elements of a claim for denial of discharge under that section are: (1) the debtor transferred, removed, concealed, destroyed, or mutilated, (2) property of the estate, (3) within one year prior to the bankruptcy filing or after the petition date, (4) with the intent to hinder, delay, or defraud a creditor or officer of the estate.[30] A claim under § 727(a)(2) requires a finding of actual intent to defraud a creditor or officer of the estate.[31] In most instances, fraudulent intent is established by circumstantial evidence, or by inferences drawn from a course of conduct.[32]

Because a § 727(a)(2) claim is premised on fraud, Fed. R. Civ. P. 9(b)'s heightened pleading standard must be satisfied.[33] That Rule requires a party alleging fraud to "state with particularity the circumstances constituting fraud" but also provides that intent and other conditions of a person's mind "may be alleged generally."[34] To meet this standard, a complaint must provide at least some details about the time, place and subject of the alleged fraud.[35] Timing is particularly important under § 727(a)(2) because it sets time parameters for the alleged fraud. Subsection (A) denies discharge if the debtor transferred or concealed in the year prior to the petition date, whereas subsection (B) applies to property transferred or concealed after the petition date.

In this case, the Complaint alleges Sanders failed to list certain assets on his bankruptcy statements and schedules. A debtor's omissions of property from verified schedules may form the basis for postpetition fraudulent concealment under § 727(a)(2)(B).[36] Here, the Complaint specifies the property allegedly omitted, including but not limited to Sanders's NIL rights, certain contract rights related to those NIL rights, a trademark for "Headache Gang," sporting equipment, music equipment, vehicles, clothing and luggage. These allegations are sufficient to adequately plead a § 727(a)(2)(B) claim.[37]

---

corporate form be disregarded.").

[30] *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1293 (10th Cir. 1997).

[31] *Ote v. Warren (In re Warren)*, 512 F.3d 1241, 1249 (10th Cir. 2008).

[32] *Id.*

[33] *McPherson Co-Op Credit Union v. Wortham (In re Wortham)*, 2020 WL 1696107, at *6 (Bankr. W.D. Okla. April 7, 2020).

[34] Fed. R. Civ. P. 9(b).

[35] *See* Koch v. Koch Industries, Inc., 203 F.3d 1202, 1236 (10th Cir. 2000).

[36] *Los Alamos Nat'l Bank v. Lamey (In re Lamey)*, 574 B.R. 240, 248 (Bankr. D.N.M. 2017); *Cobb v. Hadley (In re Hadley)*, 70 B.R. 51, 553-54 (Bankr. D. Kan. 1987).

[37] Sanders argues that some of the Complaint's allegations about the schedules are not about complete

Sanders takes issue with two alleged "transfers" identified in the Complaint—the transfer of Sanders's NIL rights and/or contracts and Sanders's alleged purchase of a house for his father. Sanders contends there are insufficient details in the Complaint about these alleged transfers. As to the purchase of the house, the Complaint cites to postpetition news reports and YouTube video of Sanders and his family dated January 27, 2024, which claim Sanders and his brothers purchased a house and gifted it to their father.[38] Assuming the alleged purchase occurred near in time to the news reports and video, these allegations give sufficient details of the who, what and when of the transfer. Sanders was sufficiently aware of the details of the alleged transfer to contend in his Motion to Dismiss that the house at issue was never purchased and is still on the market. The accuracy of Darjean's factual allegations concerning the purchase of the house are matters to be determined at trial, not in the context of a Motion to Dismiss.

The details concerning Sanders's alleged transfer of his NIL rights and/or contracts are less clear. The only mention of a "transfer" in the Complaint is an allegation that "[Sanders] failed to disclose in SOFA 18 any transfers of his individual NIL interest to [Big 21 LLC and/or SS21 LLC] or to any other entity."[39] This language is obviously focused on an alleged omission or concealment from Sanders's Statement of Financial Affairs or "SOFA" rather than a fraudulent transfer of an asset. The Court has already addressed Darjean's § 727(a)(2)(B) claim based on Sanders's omission of his NIL rights from the schedules. To the extent Darjean is also attempting, through the above quoted language, to allege Sanders fraudulently transferred his NIL rights or contracts, either pre or postpetition, to Big 12 LLC or some other entity, he has failed to state a claim under § 727(a)(2)(A) or 727(a)(2)(B) on that basis. The Complaint gives no details about a transfer of Sanders's NIL rights/contracts, including who received the transfer, when it occurred or any other surrounding circumstances.

Darjean blames this lack of detail on Sanders and Darjean's inability to conduct discovery prior to filing the Complaint. However, Darjean had the opportunity to investigate Sanders's assets by conducting an examination of Sanders and his entities pursuant to Fed. R. Bankr. P. 2004, prior to filing his complaint and failed to do so. It is well established that Rule 2004 can be used as a "pre-litigation device" to determine whether there are grounds to bring a nondischargeability action.[40] Darjean claims he tried to conduct a Rule 2004 examination but ran out of time prior to the deadline for filing § 727 claims on January 29, 2024. Yet Darjean could have sought an extension of that deadline under Fed. R. Bankr. P. 4004(b) and did not. Thus, the lack of information

---

omissions of property but rather about the lack of sufficient details or values for property that is listed. The Court agrees that these allegations do not amount to a concealment for purposes of § 727(a)(2)(B), since those assets are plainly listed on the schedules. *U.S. Trustee v. Zommerman (In re Zimmerman)*, 320 B.R. 800, 807 (Bankr. M.D. Pa. 2005). Such allegations are better considered under Darjean's § 727(a)(4) claim. *Id.*

[38] Complaint, ECF No.1, ¶ 154-55.

[39] *Id.* ¶ 144.

[40] *In re Kearney*, 590 B.R. 913, 921 (Bankr. D.N.M. 2018).

concerning Sanders's NIL rights cannot be placed solely on Sanders and is not an excuse for deficiencies in the complaint.

Based on the foregoing, the Court will deny Sanders's Motion to Dismiss the § 727(a)(2)(B) claim to the extent it is based on omissions from the schedules or Sanders's purchase of a house for his father. The Court will grant the Motion to Dismiss as to the remainder of Darjean's § 727(a) claim, with leave to amend.

### D. Section 727(a)(3)

Sanders next argues Darjean has failed to state a claim under § 727(a)(3). That section denies a discharge to a debtor who has "concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case."[41] To state a prima facie case under § 727(a)(3), a plaintiff must demonstrate the debtor "failed to maintain and preserve adequate records and that the failure made it *impossible* to ascertain his financial condition and *material business* transactions."[42] "Where the bankrupt . . . is the principal or a truly responsible officer of a corporation and incurs substantial obligations as a result of corporate activities, he is required to keep books and records."[43] In such situations, corporate record-keeping is relevant to a § 727(a)(3) analysis.[44] Intent is not an element of a § 727(a)(3) claim and, as such, pleadings under this section are governed by Fed. R. Civ. P. 8.[45]

Darjean's Complaint does not specify the books and records Sanders failed to keep, destroyed or concealed.[46] Rather, Darjean points to alleged inadequacies in Sanders's schedules as a basis for this claim.[47] Such allegations are insufficient because "§ 727(a)(3) does not deal with making false statements on one's bankruptcy schedules; that is the province of § 727(a)(4)."[48] Even assuming Sanders omitted

---

[41] 11 U.S.C. § 727(a)(3).

[42] *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1295 (10th Cir. 1997) (emphasis original).

[43] *In re Asif*, 455 B.R. at 792 (quoting *In re Halpern*, 387 F.2d 312, 315 (2nd Cir. 1968)).

[44] *Id.*

[45] *Reperex, Inc. v. May (In re May)*, 579 B.R. 586, 597 (Bankr. D. Utah 2017).

[46] *Neiman v. Irmen (In re Irmen)*, 379 B.R. 299, 311 (Bankr. N.D. Ill. 2007) (dismissing § 727(a)(3) claim where plaintiff failed to identify records that debtor failed to keep).

[47] Complaint, ECF No. 1, ¶ 167.

[48] *In re May*, 579 B.R. at 597 (noting that if omissions from bankruptcy schedules were actionable under § 727(a)(3) without a showing of fraudulent intent, that would "largely turn § 727(a)(4)(A) into a dead letter, since few plaintiffs would go to the trouble of proving intent" under that subsection).

assets and other information from his schedules, that does not show he also concealed or failed to keep other records related to his assets and businesses.

      Darjean also points to Sanders's "confusing and incomplete" testimony at the meeting of creditors concerning his businesses as a basis for the § 727(a)(3) claim. As discussed above, the Court does not find the transcript sufficiently reliable or authenticated to be used as an exhibit. Even if the Court were to consider the transcript, it does not provide a basis for Darjean's § 727(a)(3) claim. The Complaint does not quote any specific testimony by Sanders about his records or lack thereof. The Court could locate only two references in the transcript to Sanders's records. First, what appears to be counsel for Chapter 7 Trustee ("Trustee") asks Sanders about records showing ownership of his companies and Sanders responds he is not sure. Trustee's counsel then states he will request those documents from Sanders's counsel.[49] Later, Trustee's counsel asks for, and Sanders's counsel agrees to provide, bank statements for Sanders and Sanders's companies.[50] There is no indication in the transcript or the Complaint that Sanders failed to provide the requested documents to the Trustee. Counsel for Darjean was present at the meeting of creditors and asked questions of Sanders, but those questions did not relate to Sanders's records, or lack thereof. Darjean complains about Sanders's inability to answer many specific questions about his businesses at the meeting or creditors. However, Sanders's lack first-hand knowledge of the details of his business does not necessarily mean he, or the professionals he apparently employs to assist him in his business endeavors, failed keep accurate records.

      Darjean's Complaint also asserts Sanders "has failed and/or refused to produce any records to [Darjean]."[51] Yet Darjean also concedes that he only sought "informal discovery" from Sanders and did not file a motion for a Rule 2004 examination prior to filing the Complaint.[52] Sanders is under no obligation to respond to "informal" discovery requests and his failure to voluntarily provide records to Darjean is not grounds for a § 727(a)(3) claim.[53] Because the Complaint fails to allege what records Sanders failed to keep or preserve, it fails to state a claim under § 727(a)(3).

---

[49] *Id*. at 16-17.

[50] *Id*. at 41-42.

[51] Complaint, ECF No.1, ¶ 169

[52] *Id*. ¶ 152-53.

[53] *In re Irmen*, 379 B.R. at 311 (dismissing § 727(a)(3) claim where plaintiff failed to show debtor was ordered to produce books and records or was under any duty to do so); *Steele Matheny v. Maier (In re Maier)*, 498 B.R. 340, 347 (Bankr. S.D. Fla. 2013) (dismissing § 727(a)(3) claim where plaintiff failed to assert that he requested any records, or that debtor failed to comply with any particular request for information).

E.     Section 727(a)(4)

Next, Sanders seeks dismissal of Darjean's claim under § 727(a)(4)(A) and (D). Those subsections deny a discharge where the debtor knowingly and fraudulently:

(A) made a false oath or account;

[…]

(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs[.][54]

As to the § 727(a)(4)(A) claim, Darjean must show Sanders knowingly and fraudulently made a false oath and that the oath relates to a material fact.[55] A false oath may be either: "'(1) a false statement or omission in the debtor's schedules or (2) a false statement by the debtor at an examination during the course of the proceedings.'"[56] To trigger § 727(a)(4), the debtor must have made the false oath "willfully with intent to defraud."[57] Because it is "unlikely" to have a debtor testify directly concerning his fraudulent intent, intent is usually inferred from the circumstances of the case, including subsequent conduct.[58]

As discussed above regarding Darjean's § 727(a)(2) claim, Darjean has sufficiently plead Sanders omitted assets and other information from his schedules and SOFA. Sanders disputes whether he omitted some of the identified assets, but those arguments are factual disputes to be decided at trial. Sanders also contends he explained some of the omissions at the meeting of creditors. As outlined above, the Court does not find the transcript to be reliable and thus will not rely on it for purposes of deciding the Motion to Dismiss. Even if the Court did consider the transcript, the contradictions between it and the Complaint raise issues of credibility or go to the weight of the evidence to be considered at trial. They do not require dismissal of the § 727(a)(4)(A) claim.

As to the § 727(a)(4)(D) claim, Sanders argues the Complaint fails to identify any records he has withheld from an officer of the estate, such as the Chapter 7 Trustee. The Court agrees the Complaint is silent on this topic. In his Response, Darjean argues the Court may take judicial notice of a Motion to Compel Turnover filed

---

[54] 11 U.S.C. § 727(a)(4)(A), (D).

[55] *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1293 (10th Cir. 1997).

[56] *U.S. Trustee v. Garland (In re Garland)*, 417 B.R. 805, 814 (Bankr. 10th Cir. BAP 2009) (quoting 6-27 *Collier on Bankruptcy* ¶ 727.04[1][c] (15th ed. rev.2009)).

[57] *Job v. Calder (In re Calder)*, 907 F.2d 953, 955 (10th Cir. 1990).

[58] *In re Calder*, 907 F.2d at 955-56.

10

by the Trustee in Sanders's main case.[59] In that Motion, the Trustee alleges he requested various documents from Sanders and Sanders failed to turn them over. To date, Sanders has not responded to the Motion to Compel, nor has the Court issued a ruling.

In deciding the Motion to Dismiss, the Court is allowed to consider "matters of which a court may take judicial notice."[60] These include the Court's "own files and records, as well as facts which are a matter of public record."[61] However, these documents "may only be considered to show their contents, not to prove the truth of matters asserted therein."[62] Here, Darjean asks the Court to take judicial notice not only to show the Trustee filed a Motion to Compel, but also for the truth of the allegations contained therein, *i.e.* that Sanders has failed to turn over requested documents to the Trustee. Accordingly, the Court will take judicial notice of the filing of the Motion to Compel, but not of its contents. Based solely on the facts asserted in the Complaint, Darjean has failed to state a claim under § 727(a)(4)(D).

**F.      Section 727(a)(5)**

Sanders contends Darjean failed to state a claim under § 727(a)(5), which provides: "The court shall grant the debtor a discharge, unless—... (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities[.]"[63] A prima facie case under § 727(a)(5) exists where a creditor shows there was an unusual and unexplained disappearance of assets shortly before the debtor filed bankruptcy.[64] This can be satisfied by showing the debtor "at a time not remote in time to the filing of his bankruptcy, had assets that would have belonged to the bankruptcy estate but did not possess those assets as of the petition date."[65] The burden then shifts to Sanders to offer a satisfactory explanation of the loss or dissipation of the assets.[66]

Section 727(a)(5) does not contain an element of fraud and, therefore, is governed by the notice requirement of Fed. R. Civ. P. 8. Even under the notice pleading standard, however, a claimant must do more than simply allege the elements

---

[59] Case No. 23-14859, ECF No. 43.

[60] *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

[61] *Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001).

[62] *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).

[63] 11 U.S.C. § 727(a)(5).

[64] *Grassmann v. Brown (In re Brown)*, 570 B.R. 98, 118 (Bankr. W.D. Okla. 2017).

[65] *May v. Shepherd (In re Shepherd)*, 2005 WL 4147868, at *2 (Bankr. D. Kan. Oct. 7, 2005).

[66] *Id*.

11

of a § 727(a)(5) claim. A plaintiff must identify with specificity the assets that were at one time owned by the debtor but are no longer available for the debtor's creditors.[67] In this case, Darjean's Complaint under "Count 4" merely recites the elements of § 727(a)(5) without identifying any lost assets. In his response to the Motion to Dismiss, Darjean points to those assets identified in other parts of the Complaint Sanders allegedly failed to list on the schedules. As to those specific assets, the Court finds Darjean has sufficiently stated a claim under § 727(a)(5). Sanders's explanation for why he did not own and did not schedule these assets are matters to be considered at trial.

### G. § 727(a)(6)

Finally, Sanders seeks dismissal of Darjean's claim under § 727(a)(6). Under that subsection, a debtor will not be granted a discharge if the debtor has refused, in the case:

> (A) to obey any lawful order of the court, other than an order to respond to a material question or to testify;
>
> (B) on the ground of privilege against self-incrimination, to respond to a material question approved by the court or to testify, after the debtor has been granted immunity with respect to the matter concerning which such privilege was invoked; or
>
> (C) on a ground other than the properly invoked privilege against self-incrimination, to respond to a material question approved by the court or to testify[.][68]

The Complaint does not specify a court order Sanders failed to obey, testimony Sanders refused to give or any court-approved question Sanders refused to answer by invoking the privilege against self-incrimination. The Complaint merely states Darjean has included the § 727(a)(6) claim "in order to preserve this claim in the event [Sanders] engages in any of the conduct reference in § 727(a)(6)."[69]

In his Motion to Dismiss, Sanders argues this claim is not ripe because Darjean cannot identify any conduct which violates § 727(a)(6). In response, Darjean argues this claim is "live" because the Trustee has filed a Motion to Compel Turnover in Sanders's main bankruptcy case and it is possible Sanders may not comply with an order issued on the Trustee's motion. This is an apparent reference to § 727(a)(6)(A). To establish a claim under this subsection, a claimant must demonstrate "the debtor

---

[67] *Eden v. Eden (In re Eden)*, 584 B.R. 795, 807 (Bankr. N.D. Ga. 2018) (dismissing § 727(a)(5) claim where missing assets not specified); *Premier Capital, LLC v. Crawford (In re Crawford)*, 531 B.R. 275, 309 (Bankr. D. Mass. 2015) (same); *Ehle v. Brien (In re Brien)*, 208 B.R. 255, 258 (1st Cir. BAP 1997) (same).

[68] 11 U.S.C. § 727(a)(6).

[69] Complaint, ECF No.1, ¶ 191.

received an order and willfully failed to comply with its terms."[70]  Darjean has not sufficiently alleged these elements.  There is no court order on the Trustee's Motion to Compel and no allegation Sanders failed to comply with an order.  Absent these basic elements, Darjean has failed to state a claim under § 727(a)(6).[71]  Because Darjean has no basis to assert a claim under § 727(a)(6), allowing an amendment to add such a claim at this time would be futile.  If and when Darjean has sufficient grounds to assert a § 727(a)(6) claim, he may either seek an extension of the deadline to assert such a claim under Fed. R. Bankr. P. 4004(b)(2) or seek revocation of discharge under § 727(d)(3).

## CONCLUSION

For the reasons stated above, the Court hereby ORDERS the Motion to Dismiss is GRANTED in part and DENIED in part as follows:

1.  The Motion to Dismiss Count One pursuant to § 727(a)(2) is DENIED to the extent that claim is based on alleged omissions from the schedules or Sanders's alleged purchase of a house for his father.  In all other respects, the Motion to Dismiss count one is GRANTED, and Darjean is granted leave to amend.

2.  The Motion to Dismiss Count Two pursuant to § 727(a)(3) is GRANTED, and Darjean is granted leave to amend.

3.  The Motion to Dismiss Count Three pursuant to § 727(a)(4)(A) is DENIED.

4.  The Motion to Dismiss Count Three pursuant to § 727(a)(4)(D) is GRANTED, and Darjean is granted leave to amend.

4.  The Motion to Dismiss Count Four pursuant to § 727(a)(5) is DENIED.

5.  The Motion to Dismiss Count Five pursuant to § 727(a)(6) is GRANTED.

6.  Darjean shall file an amended complaint on or before **June 27, 2024**.  The amended complaint shall not contain any confidential information covered by the protective order issued by the Texas state court.

Dated: June 13, 2024.                    BY THE COURT:

Michael E. Romero, Judge
United States Bankruptcy Court

---

[70] *First Bank & Trust Co. v. Reynolds (In re Reynolds)*, 562 B.R. 497, 507 (Bankr. E.D. Okla. 2016).

[71] *See id*. (denying § 727(a)(6)(A) claim where plaintiff failed to identify order the debtor disobeyed).